IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| MAYS & ASSOCIATES INC. | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No. RDB 05-437 |
| | * | |
| ROBIN N. EULER | * | |
| and | * | |
| DAVID R. EULER, | * | |
| Defendants. | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

MEMORANDUM OPINION

Pending before this Court is the Motion to Dismiss of the Defendants Robin and David Euler,

filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the basis of lack of subject

matter jurisdiction, and pursuant to Rule 12(b)(6), for failure to state a claim upon which relief may be

granted.  Also pending is Plaintiff Mays & Associates' Motion for Preliminary Injunction and Motion to

Amend its Complaint.   This Court must first address Defendants' Motion to Dismiss as it challenges

this Court's jurisdiction over this action.  Plaintiff alleges that this Court has jurisdiction pursuant to 28

U.S.C. § 1331,[1] based on claims brought under the Copyright Act, 17 U.S.C. §§ 101 *et seq.* and the

Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and pursuant to 28 U.S.C. § 1338.[2]  In addition, Plaintiff's

---

[1]     Pursuant to 28 U.S.C. § 1331, a United States District Court has original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.

[2]     Pursuant to 28 U.S.C. § 1338, a United States District Court has "original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."  28 U.S.C. § 1338(a).  In addition, a United States District Court has "original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws."  28 U.S.C. §

Complaint contains various state law claims, including unfair competition, misappropriation of trade secrets, conversion, tortious interference with prospective advantage, tortious interference with contractual relations, and breach of fiduciary duty.[3]  Defendants' Motion to Dismiss has been fully briefed and, on May 6, 2005, this Court conducted a hearing on that motion.  For reasons of efficiency, this Court also addressed Plaintiff's Motion for Preliminary Injunction in the event that it was determined that there was jurisdiction over this action.  For the reasons stated below, Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) is GRANTED and this case shall be DISMISSED.[4]

<u>BACKGROUND</u>

This Court reviews the facts of this case in the light most favorable to the Plaintiff.  Mays & Associates ("Mays") is a Maryland based, full service web and print design, marketing and communications company developing high impact creative strategies in print, television, radio, interactive, multi-media, and website design.  It is a small company consisting of four full time employees in addition to approximately six strategic partners who work on certain client projects with the company.  Robin Euler, one of the Defendants in this case, worked as a graphic designer at Mays until January 5, 2005.  While the parties are in dispute over exactly what role Ms. Euler played while employed at Mays, this dispute does not impact the questions before the Court.  It is undisputed that

1338(b).

[3]     Although not specifically cited in Plaintiff's Complaint, pursuant to 28 U.S.C. § 1367, a federal court may exercise supplemental jurisdiction over claims that otherwise would not be within its jurisdiction when the claims arise from the same set of facts as those claims that are properly before the court.

[4]     As a result, Plaintiff's Motion for Preliminary Injunction and Motion to Amend its Complaint are MOOT.

Ms. Euler was not asked to, nor did she, sign a non-compete agreement or a trade secret agreement with Mays during the entire term of her employment.

After terminating her employment with Mays on January 5, 2005, Ms. Euler established Red Robin Design, a Carroll County, Maryland graphic and web design boutique that specializes in creating logos, websites, and marketing materials for small to medium-size businesses and individuals.  On the Reb Robin Design website (www.redrobindesign.com), Ms. Euler has a section showing her portfolio of work, including website design, logos, print ads, and large format graphics, some of which were projects completed for Mays' clients while Ms. Euler was an employee at Mays.[5]  For these works, Ms. Euler has posted the following disclaimer: "**Disclaimer:** The project shown here was designed and executed by owner, Robin N. Euler, while on staff as Senior Graphic & Web Designer for Mays & Associates, Inc. This image is not intended for sale or distribution, and we do not take the credit for handling this particular account through Red Robin Design. It is only intended to be used as an example of Robin N. Euler's creative work."

On Friday, February 11, 2005, Mays submitted 30 copyright applications to the United States Copyright Office seeking to register certain works created for clients of Mays during Robin Euler's employment with Mays.  On Monday, February 14, 2005, Mays filed its Complaint in this Court and a Motion for Preliminary Injunction.  The Complaint alleges the following Counts: Count I - Violation of Copyright Act (17 U.S.C. §§ 101, *et seq.*); Count II - Unfair Competition in Violation of the Lanham Act (15 U.S.C. § 1125), Count III - Unfair Competition (Common Law); Count IV -

---

[5]     As noted above, Defendants contend that Ms. Euler was the exclusive graphic designer for Mays, but Plaintiff contends that others in the organization also contributed to the creative design process as well as the other aspects necessary to service the needs of Mays' clients.  This dispute as to Ms. Euler's job responsibilities is immaterial to the issues currently before the Court.

Misappropriation of Trade Secrets under the Maryland Trade Secrets Act; Count V - Conversion,

Count VI - Tortious Interference with Prospective Advantage, Count VII - Tortious Interference with

Contractual Relations; and Count VIII - Breach of Fiduciary Duty.

 As of the date of the hearing, May 6, 2005, Plaintiff had received four copyright registrations

from the United States Copyright Office for certain audio visual works from the thirty applications

submitted on February 11, 2005.  Subsequent to that hearing, Plaintiff moved for leave to file a

supplemental motion noting some additional certificates of registration having been issued.[6]   There are

remaining copyright applications still pending with the Copyright Office.  Regardless of the issuance of

any certificates or the pendency of any applications, at the hearing before this Court the parties agreed

that only two works for which the Plaintiff has applied for copyrights remain at issue in this matter - the

website designed for the Young School and a print advertisement created for Vectorworks.[7]  All of

Plaintiff's claims relate to these two works.  It is undisputed that copyright applications for these works

have been filed, but the Copyright Office has not issued certificates of registration or denied same with

respect to these two works.

## STANDARD OF REVIEW

 The burden is on the plaintiff to prove that subject matter jurisdiction properly exists in the

---

[6] While this Court denied this supplemental motion, that disposition had no effect upon this Court's ruling on the jurisdictional question.

[7] Defendants have highlighted that the Young School website indicates that the Young School, not Mays & Associates, holds a copyright for the work.  Plaintiff contends that it has rightfully applied for a copyright application for this website because it is applying for copyright protection for the underlying computer source code and not the visual images evident from viewing the Young School website, which is copyrighted to the Young School.  However, as highlighted by the Defendants, Mays' copyright application states that the "nature of authorship" sought is for the "text and images" on the Young School website.  (Compl. Ex. 7.)  The Vectorworks print advertisement does not appear to bear a copyright notice indicating that Vectorworks owns a copyright for the ad.  Mays' copyright application states that the "nature of authorship" sought is for the "text and graphics" on the Vectorworks10 print.

federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond v. Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991). The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond*, 945 F.2d at 768).

A Rule 12(b)(6) motion to dismiss should be granted only if, after accepting the plaintiff's well-pleaded allegations as true, it appears certain that the plaintiff can prove no set of facts in support of his claim entitling him to relief. *Marketing Prods. Mgmt., LLC v. Healthandbeautydirect.com, Inc.,* 333 F. Supp. 2d 418, 420 (D. Md. 2004); (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir. 1999)). In reviewing the complaint, the court accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

DISCUSSION

As noted above, Plaintiff alleges that this Court has jurisdiction pursuant to 28 U.S.C. § 1331, based on claims brought under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and pursuant to 28 U.S.C. § 1338.[8] Plaintiff alleges that Defendants violated the Copyright Act by using certain graphic works on the Red Robin Design website that belong to

---

[8]     In addition, Plaintiff alleges various state law claims, which include unfair competition, misappropriation of trade secrets, conversion, tortious interference with prospective advantage, tortious interference with contractual relations, and breach of fiduciary duty.

Mays without its authorization.  Plaintiff also alleges that Defendants violated the Lanham Act because of Red Robin Design's use of these images have caused, or are likely to cause, confusion, mistake or to deceive others in the marketplace as to the origin, sponsorship, or approval of the services or commercial activities being offered by the Defendants.  Defendants argue in their Motion to Dismiss that this Court lacks subject matter jurisdiction over Plaintiff's Copyright Act claim because Plaintiff has merely *applied* for a copyright, on the eve of filing this suit, but has not actually received a *registered* copyright for either of the two works that Defendants are allegedly currently infringing.  Defendants further claim that Plaintiff's Lanham Act claim cannot be maintained because it is preempted by copyright law and does not state a claim upon which relief can be granted.  The Court will address each of these assertions in turn.

**1.      Plaintiff's Copyright Act Claim Pursuant to 17 U.S.C. § 411(a) (Count I)**

It is axiomatic that copyright registration is a jurisdictional prerequisite to bringing an action for infringement under the Copyright Act.  *See* 17 U.S.C. §§ 101 *et seq.*; *Trandes Corp. v. Guy F. Atkinson Co.,* 996 F.2d 655, 658 (4th Cir. 1993); *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 283 (4th Cir. 2003).  In both of these cases the Fourth Circuit noted the precise language of the Copyright Act, which provides:

> Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), no action for infringement of the copyright in any United States work shall be instituted until *preregistration or registration* of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and *registration has been refused*, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights. The Register may, at his or her option, become a party to the action with respect to the issue of registrability of the copyright claim by entering an appearance within sixty days after such service, but the Register's failure to become a party shall not deprive the court of jurisdiction to determine that issue.

17 U.S.C. § 411(a) (emphasis added).  In this action, the United States Copyright Office has not issued registrations for the two copyrights currently at issue (*i.e.* the Young School website or Vectorworks print ad), nor has it refused registration.

The precise issue posed in this case is defining when a work is actually *registered* under copyright law.  Defendants contend that the Plaintiff's last minute copyright applications are insufficient to confer federal subject matter jurisdiction because an actual copyright registration, issued by the United States Copyright Office, is required to provide jurisdiction under the Copyright Act.  Plaintiff contends that a copyright application is sufficient and requiring registration to confer jurisdiction under the Copyright Act would harm an applicant's ability to protect its intellectual property rights.

The United States District Court for the Middle District of North Carolina recently addressed this same issue in *Iconbazaar, L.L.C. v. America Online, Inc.*, 308 F. Supp. 2d 630 (M.D.N.C. 2004).  The court in *Iconbazaar* adopted the position that filing a copyright application meets the registration requirement in 17 U.S.C. § 411(a) and, therefore, subject matter jurisdiction existed for the plaintiff's copyright claim.  *See id.* at 634.  In *Iconbazaar,* the defendant moved to dismiss the plaintiff's copyright claim based on lack of subject matter jurisdiction asserting that the plaintiff had not registered the computer icon file at issue.  *See id.* at 632.  The court aptly noted that "[t]he dispute boils down to the issue of when a work is considered 'registered' for purposes of copyright law." *Id.*  While the plaintiff, Iconbazaar, contended that registration was complete upon sending an application to the United States Copyright Office, the defendant, AOL, contended that registration was not complete until a party has received, or has been denied, a registration certificate.  *Id.*

In a very thorough review of case authority, the court in *Iconbazaar* noted that there is a split of

authority on when a copyright is registered for purposes of 17 U.S.C. § 411(a)[9] and that the Fourth

Circuit has not directly addressed this issue.  *See id.* at 633.  The North Carolina district court noted

the opinion of this Court in *Berlyn, Inc. v. The Gazette Newspapers, Inc.*, 157 F. Supp. 2d 609 (D.

Md. 2001) and that of the United States District Court for the Eastern District of Virginia in *Secure*

*Servs. Tech., Inc. v. Time & Space Processing, Inc.,* 722 F. Supp. 1354 (E.D. Va. 1989)[10] as

examples of district courts within the Fourth Circuit that have found registration upon application for a

copyright.  This Court, however, respectfully disagrees with the North Carolina district court in its

apparent conclusion that this Court's opinion in the *Berlyn* case supports the registration upon

application theory.

On several occasions this Court has approached the precise question posed in this case.  In

*Berlyn, Inc. v. The Gazette Newspapers, Inc.*, 157 F. Supp. 2d 609 (D. Md. 2001), *Lowery*

*Reports, Inc. v. Legg Mason, Inc.,* 271 F. Supp. 2d 737 (D. Md. 2003), and *Glynn Interactive,*

---

[9]     The court noted a number of jurisdictions that have found that a copyright is registered upon filing a completed application with the United States Copyright Office.  *See e.g., Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.* 210 F. Supp. 2d 147, 157 (E.D.N.Y. 2002); *Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.,* 81 F. Supp. 2d 70 (D.D.C. 2000); *Havens v. Time Warner, Inc.,* 896 F. Supp. 141, 142-43 (S.D.N.Y. 1995); *Tabra Inc. v. Treasures de Paradise Designs Inc.,* 20 U.S.P.Q.2d 1313, 1318 (N.D. Cal. 1992); *Apple Barrel Prods., Inc. v. Beard,* 730 F.2d 384, 387-87 (5th Cir. 1984) (citing *Nimmer on Copyright*).  The court also noted that a number of jurisdictions require a plaintiff to show receipt, or denial, of a copyright registration certificate before bringing suit.  *See e.g., Goebel v. Manis,* 39 F. Supp. 2d 1318, 1320 (D. Kan. 1999); *Miller v. CP Chems., Inc.,* 808 F. Supp. 1238, 1241 (D.S.C. 1992); *Demetriades v. Kaufmann,* 680 F. Supp. 658, 661 (S.D.N.Y. 1988).  *See also, M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486, 1488 n.4 (11th Cir. 1990) (discussing the requirement of "registration" and including a footnote citing, among others, several cases requiring registration certificates).

[10]     Both *Secure Servs. Tech., Inc.* and *Iconbazaar* cite *Eltra Corp. v. Ringer*, 579 F.2d 294 (4th Cir. 1978) to support that no registration finding by the United States Copyright Office is needed prior to filing suit in federal court.  However, *Eltra* was addressing the situation of the United States Copyright Office rejecting an application for registration.  *See Eltra Corp.,* 579 F.2d at 269 n.4.  Section 411(a), as outlined above, specifically provides procedures for cases in which the United States Copyright Office has rejected an application for registration, which is not the case in this instant matter.

*Inc. v. iTelehealth, Inc.*, 2004 WL 439236 (D. Md. 2004) (unpublished) this Court has declined to specifically uphold the registration upon application approach ratified by the North Carolina district court in *Iconbazaar*.

In *Berlyn*, this Court dismissed the plaintiff's Copyright Act claim because the court lacked subject matter jurisdiction over it. *See Berlyn, Inc.,* 157 F. Supp. 2d at 623. This Court  noted that courts have construed the statutory language of 17 U.S.C. § 411(a) to require copyright registration as a jurisdictional prerequisite to bringing an action under the Copyright Act. *See id.* (citing *CACI International, Inc. v. Pentagen Techs. Int'l, Ltd.,* 70 F.3d 111, 1995 WL 679952, at *3 (4th Cir. 1995) (unpublished opinion); *Araya v. Latino Publ'g, Inc.,* 2001 WL 436155, at *2 (D. Md. 2001); *Brewer-Giorgio v. Producers Video, Inc.,* 216 F.3d 1281, 1285 (11th Cir. 2000); *Trandes Corp. v. Guy F. Atkinson Co.,* 996 F.2d 655, 658 (4th Cir. 1993)). However, in contrast to the instant case, the plaintiff had not even applied for a copyright for the works at issue, as was noted by the Court when it dismissed the Copyright Act claim. Therefore, *Berlyn* did not reach the issue currently before this Court. While dicta in *Berlyn* may have suggested a registration upon application approach, two subsequent opinions of this Court have declined to adopt that principle.

*Lowery Reports, Inc. v. Legg Mason, Inc.,* 271 F. Supp. 2d 737 (D. Md. 2003) is instructive, but distinguishable from the case *sub judice* because the plaintiff sought relief under the Copyright Act only for its *registered* copyrights and presented certificates of copyright registration for the works at issue as proof of ownership. *Id.* at 744. Similarly, in *Glynn Interactive, Inc. v. iTelehealth, Inc.*, 2004 WL 439236 (D. Md. 2004) the plaintiff had apparently applied for a

copyright, but had not presented to the court a certificate of copyright registration. *See id.* at *4.[11]

This Court noted that "[w]hile some courts have held that submission of registration materials suffices to maintain a copyright infringement claim, others require either the issuance of a registration or an official refusal to do so." *Id.*

As noted by the North Carolina district court in the *Inconbazaar* case, the goal of statutory interpretation is always to ascertain and implement the intent of Congress. *Scott v. U.S.,* 328 F.3d 132, 138 (4th Cir. 2003). "The first step of this process is to determine whether the statutory language has a plain and unambiguous meaning. If the statute is unambiguous and if the statutory scheme is coherent and consistent, our inquiry ends there." *Id.* at 139; *see also U.S. v. Akinkoye,* 185 F.3d 192, 200 (4th Cir. 1999) (stating that only when the statute is ambiguous should a court look beyond the language of the statute); *Kofa v. U.S. I.N.S.,* 60 F.3d 1084, 1094 (4th Cir. 1995) (courts should strive to give effect to every word in the statute). When examining statutory language, the court should generally give words their ordinary, contemporary, and common meaning. *Scott*, 328 F.3d at 139 (citing *Williams v. Taylor,* 529 U.S. 420, 431 (2000)).

This Court finds that 17 U.S.C. § 411(a) when read to give the words their ordinary, contemporary, and common meaning, clearly evidences Congress' intent to require something more than application for a copyright prior to filing suit. Section 411(a) specifically states that *preregistration or registration* are required to file an action for infringement. In fact, the term *application* is used in the same section and is clearly something separate and apart from registration. Congress also specifically described the process of seeking registration (" . . . the deposit, application,

---

[11]      In *Glynn*, this Court granted partial summary judgment in favor of the defendant on the plaintiff's copyright infringement claim finding that plaintiff could not seek statutory damages or attorney's fees on this claim. *See id.* at *4.

and fee required for registration have been delivered to the Copyright Office . . .") without labeling this process as *registration* for purposes of Section 411(a). This Section evidences Congress' intent for the Unites States Copyright Office to be able to apply its expertise to review applications to determine whether *registration* is warranted and specifically provides for a course of action to allow suit when the Copyright Office takes action and denies an applicant's registration. This process reflects understandable public policy. The receipt of an actual certificate of registration or denial of same is a jurisdictional prerequisite as this Court should not exercise its jurisdiction prematurely and "prejudge" a determination to be made by the Copyright Office. *See Goebel v. Manis*, 39 F. Supp. 2d 1319, 1320 (D. Kan. 1999); *Demetriades v. Kaufmann*, 680 F. Supp. 658, 661 (S.D.N.Y. 1988). "The rationale for the requirement is consistent with the obligation of the Copyright Office to determine in the first instance the validity of a copyright request." *Demetriades,* 680 F. Supp. at 661.

In *Secure Servs. Tech., Inc. v. Time & Space Processing, Inc.,* 722 F. Supp. 1354 (E.D. Va. 1989), the Virginia district court suggested that the approach adopted by this Court would leave "the owner of a copyright . . . in legal limbo while the Copyright Office considers whether he qualifies for a certification of registration." *Id.* at 1364. Indeed, the facts of this case illustrate that the registration upon application approach adopted by Plaintiff would place this Court in "limbo." Plaintiff filed 30 copyright applications on a Friday and immediately, on the following Monday, sought injunctive relief in this Court. To permit the imposition of jurisdiction upon this Court in this fashion would cause this Court to "prejudge" determinations of the Copyright Office prior to its exercise of its expertise in the review of these applications. It should be noted that the United States District Court for the District of South Carolina in *Miller v. CP Chems. Inc.*, 808 F. Supp. 1238 (D.S.C. 1992) noted the "two jurisdictional prerequisites" to a copyright infringement action, to wit: registration or denial. *Id.* at 1241.

Indeed, the South Carolina district court suggested that in the event of a denial of a copyright application, the plaintiff would be "required to join the copyright office as a defendant." *Id.*[12]

In *Iconbazaar* the court appears concerned that "[t]he process of processing and evaluating a copyright application could be a lengthy one, during which time an infringing use may continue unchallenged if the owner is not allowed to begin suit." *Iconbazaar*, 308 F. Supp. 2d at 634. First, the timeliness concern must also be balanced against the ability of any litigant to assert federal jurisdiction by applying for a copyright registration on the eve of filing suit. Second, Congress certainly considered issues of potential prejudice to a copyright applicant when enacting the Copyright Act and including the statute of limitations section, located at 17 U.S.C. § 410(d), which essentially "backdates" registration to the day when the Copyright Office received a complete application for purposes of the statute of limitations. *See* 17 U.S.C. § 410(d) ("The effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received in the Copyright Office."). As a result, an applicant who is granted a registration is not unfairly prejudiced by the time it takes the Copyright Office to process its application. Lastly, the assessment of an appropriate damage award for wrongful use of a registered copyright should alleviate concern over the time period during which an infringing use may continue unchallenged while the Copyright Office utilizes its expertise to make a registration determination.

This Court finds that the plain language of the Copyright Act, reflecting sound public policy,

---

[12]     As stated in 17 U.S.C. § 411(a), when a plaintiff is refused registration by the Copyright Office, he must notify the Copyright Office that he is instituting suit. However, it is within the Register of Copyright's discretion to become a party to the plaintiff's infringement action and the Register's failure to become a party does not deprive the federal court of jurisdiction.

requires registration of a copyright or denial of same as jurisdictional prerequisites to instituting an action for copyright infringement.  The Copyright Office has yet to register or deny copyrights for the two works in question - the website designed for the Young School and a print advertisement created for Vectorworks.  Accordingly, this Court presently lacks jurisdiction with respect to the copyright infringement claim.  Therefore, Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) is GRANTED as to Plaintiff's Copyright Act claim and Count I of Plaintiff's Complaint shall be DISMISSED without prejudice.

**2.      Plaintiff's Lanham Act Claim Under § 43(a) (Count II)**

Plaintiff claims that Defendants' actions constitute unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125.[13]  The Lanham Act was intended to make "actionable the deceptive and misleading use of marks," and "to protect persons engaged in . . . commerce against unfair competition."  15 U.S.C. § 1127.  However, Defendants argue that the Lanham Act claim cannot be asserted in this case, as it is preempted by copyright law.

In support of their position that Plaintiff's Lanham Act claim is preempted by copyright law,

---

[13]      15 U.S.C. § 1125(a), entitled "Civil action" states:
1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,
    connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
    (B) in commercial advertising or promotion, misrepresents the nature, characteristics,
    qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Defendants cite the unanimous[14] Supreme Court opinion in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  In *Dastar*, Twentieth Century Fox Film Corp. ("Twentieth Century Fox") obtained exclusive rights to produce a television series based on General Dwight D. Eisenhower's book *Crusade in Europe*, detailing the allied campaign in Europe during World War II. *See id.* at 25-26.  The original Crusade in Europe television series aired in 1949 and the copyright of that series expired in 1977.  *Id.* at 26.  In 1988, Twentieth Century Fox reacquired the television series rights to Crusade in Europe, including the exclusive rights to distribute the series in video.  *Id.*  In 1995, Dastar Corp. ("Dastar") released a video titled World War II Campaigns in Europe, which was an edited version of the *original* version of the Crusade television series that was in the public domain.  *Id.* Twentieth Century Fox brought suit against Dastar for copyright infringement and alleged "that Dastar's sale of Campaigns 'without proper credit' to the Crusade television series constitutes 'reverse passing off' in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a) . . . ."  *Id.* at 27.

The Supreme Court stated that " . . . the gravamen of respondents' claim is that, in marketing and selling Campaigns as its own product without acknowledging its nearly wholesale reliance on the Crusade television series, Dastar has made a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion . . . as to the origin . . . of his or her goods."  *Id*. at 31 (internal quotations omitted).  The Supreme Court noted:

> . . . as used in the Lanham Act, the phrase "origin of goods" is in our view incapable of connoting the person or entity that originated the ideas or communications that "goods" embody or contain. Such an extension would not only stretch the text, but it would be out of accord with the history and purpose of the Lanham Act and inconsistent with precedent.

---

[14]     Justice Breyer did not take part in the consideration or decision of this case.

*Id.* at 31-32.  The Court noted that ". . . in construing the Lanham Act, we have been careful to caution against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright."  *Id.* at 34 (internal citation and quotations omitted).  The Court found that ". . . reading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods . . . .  To hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do."  *Id.* at 37.

In the case *sub judice*, Defendants posted a disclaimer on the Red Robin Design website for the works created while Ms. Euler was employed at Mays stating: "The project shown here was designed and executed by owner, Robin N. Euler, while on staff as Senior Graphic & Web Designer for Mays & Associates, Inc. This image is not intended for sale or distribution, and we do not take the credit for handling this particular account through Red Robin Design. It is only intended to be used as an example of Robin N. Euler's creative work."  The disclaimer makes clear that the works shown are not intended for sale or distribution.  However, Plaintiff contends that the disclaimer does not properly attribute credit to Mays for its "creative work in the development, implementation, design, and execution of the reproduced and displayed Mays-Owned Portfolio Sample[s]."  (Compl. at ¶ 41.) Under *Dastar*, § 43(a) of the Lanham Act only covers the *tangible goods* themselves and not "any idea, concept, or communication embodied in those goods," which is covered, in this case, by copyright law.  *Dastar*, 539 U.S. at 37.  Accordingly, the Plaintiff's Lanham Act claim in Count II fails

15

to state a claim upon which relief can be granted.  Therefore, Defendants' Motion to Dismiss is

GRANTED pursuant to Rule 12(b)(6) with respect to Plaintiff's Lanham Act claim and Count II of

Plaintiff's Complaint shall be DISMISSED with prejudice.

**3.**      **Plaintiff's State Law Claims (Counts III-VIII)**

The Plaintiff's state law claims, (Count III - Unfair Competition (Common Law), Count IV -

Misappropriation of Trade Secrets under the Maryland Trade Secrets Act, Count V - Conversion,

Count VI - Tortious Interference with Prospective Advantage, Count VII - Tortious Interference with

Contractual Relations, and Count VIII - Breach of Fiduciary Duty), have no independent basis for

federal subject matter jurisdiction.  This Court, in its discretion, declines to exercise supplemental

jurisdiction over the remaining state law claims contained in Counts III-VIII of Plaintiff's Complaint.

*See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a

claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .");

*see also Carnegie-Mellon University v. Cohill,* 484 U.S. 343 (1988); *Hinson v. Norwest Finial.*

*South Carolina, Inc.,* 239 F.3d 611, 617 (4th Cir. 2001) ("[W]e conclude, that under the authority of

28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a

district court has inherent power to dismiss the case or, in cases removed from State court, to remand,

provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have

been met."); *Hall v. Prince George's County,* 189 F. Supp. 2d 320, 324 (D. Md. 2002) (dismissing

remaining state law claims without prejudice as a result of the dismissal of the federal claims).

Therefore, Counts III-VIII are DISMISSED without prejudice.  *See Revene v. Charles County*

*Comm'rs,* 882 F.2d 870, 875 (4th Cir. 1989) (holding that the district court's order "dismissing the

16

pendent state-law claims . . . should have been entered without prejudice.").

<u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) is GRANTED with respect to Plaintiff's Copyright Act claim in Count I and that claim is DISMISSED without prejudice.  With respect to Plaintiff's Lanham Act claim in Count II, Defendants' Motion to Dismiss is GRANTED pursuant to Rule 12(b)(6) and said claim is DISMISSED with prejudice.  With respect to Plaintiff's state law claims set forth in Counts III-VIII, this Court declines to exercise supplemental jurisdiction and said Counts are DISMISSED without prejudice.  Accordingly, this case shall be DISMISSED.  As a result, Plaintiff's Motion for Preliminary Injunction and Motion to Amend its Complaint are MOOT.  A separate Order will follow.


Date:  May 18, 2005                    /s/_____
                                       Richard D. Bennett
                                       United States District Judge

17